A. L. JACKSON CHEVROLET, INC., a
corporation, Appellee,

v.

Bill OXLEY, d/b/a Guymon Motor
Sales, Appellant.

No. 50034.

Supreme Court of Oklahoma.

May 10, 1977.

Ogden, Ogden & Board, Guymon, for appellee.

Dale, Wright & Brooks by William K. Brooks, Guymon, for appellant.

HODGES, Chief Justice.

■ The question presented by this case is whether a corporate officer who signs a check on a corporate account without designating the capacity in which he signs is personally liable as the drawer of the check. This appeal involves an action for recovery on account. It arose when the appellee, A. L. Jackson Chevrolet, Inc., filed suit against the appellant, Bill Oxley, d/b/a Guymon

Motor Sales, on open account for certain purchases of merchandise and parts in the amount of $798.52. The invoices reflect that the purchaser was Guymon Motor Sales, not Guymon Motor Sales, Inc.[1] The purchases were used in the Guymon Motor Sales, Inc.'s business and were paid for by two checks executed by its president, Bill Oxley, in his individual capacity.[2] It was admitted by appellant that the only thing appearing on the checks to indicate that a corporation was involved in the transaction was the appearance of the corporation's checking account number which was written on the checks by appellant. No corporate name was written, or printed, on the checks. Only Bill Oxley's signature appeared on the checks as the drawer, and there was no indication on either check that appellant was signing in his representative capacity as an agent of a corporation. Appellant presented no evidence of any representation by him that he was acting on behalf of any third party at the time he drew the checks. Oxley's testimony was that after the action was filed, he told appellee that he should not be suing him because it was a corporate debt, and that "he thought" he had mentioned this one time before, but apparently not at the time the checks were drawn. The evidence of the appellee is that there was never any discussion concerning the debt being a corporate debt. The signature of Bill Oxley

1. Because the invoices were made to Guymon Motor Sales, appellee did not have the pre-suit notice that appellant had incorporated. It is required by 18 O.S.1971 § 1.11(a) that:

The name of any corporation formed under this Act may be in any language, but shall be expressed in letters or characters of the English language, and shall end with the word "corporation," "company," "incorporated," or "limited," or an abbreviation of one of these words.

2. Appellee's Exhibit No. 2 includes the checks drawn by Bill Oxley:

was not denied by a verified denial[3] and his answer contained only a general denial. There is no dispute that appellant's signature appears on the checks in question, nor is there evidence to substantiate an understanding between the immediate parties that appellant was acting in a corporate capacity.

The trial court after hearing the evidence found the corporate entity should be disregarded and entered judgment for A. L. Jackson Chevrolet, Inc. against Bill Oxley in his individual capacity.

■ Pursuant to 12A O.S.1971 § 3–307, when signatures are admitted or established, production of the instrument entitles a holder to recover unless the defendant establishes a defense, and unless specifically denied in the pleadings each signature is admitted. The burden of establishing the effectiveness of a signature is on the party claiming under it, but the signature is presumed to be genuine or authorized except where the action is to enforce an obligation of a purported signer who has died or become incompetent before proof is required.[4] It has long been the rule that one who places his unqualified signature on an instrument as maker or endorser will not be able to escape liability by a mere assertion that he intended to sign only as the representative of a corporation of which he is an officer and director.[5]

■ Under the Uniform Commercial Code, 12A O.S.1971 § 3–403(2)(b),[6] an unauthorized representative who signs his own name to an instrument, except as otherwise established between the immediate parties, is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.[7] The burden of proof is on the maker to affirmatively show an understanding between himself and appellee that appellant would not be personal-

3. 12 O.S.1971 § 286 requires:

In all actions, allegations of the execution of written instruments and endorsements thereon of the existence of a corporation or partnership, or of any appointment of authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney.

4. The burden of establishing signatures and defenses is delineated by 12A O.S.1971 § 3–307(1)(a), (b), (2):

(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
(a) the burden of establishing it is on the party claiming under the signature; but
(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

5. *Weagant v. Camden,* 37 Okl. 508, 132 P. 487 (1913); Annot., "Personal Liability of One Who Signs or Indorses Without Qualification Commercial Paper of Corporation," 82 A.L.R.2d 424 (1962). See also Annot., "Personal Liability of Officers or Directors of Corporation on Corporate Checks Issued Against Insufficient Funds," 47 A.L.R.3d 1250 (1973).

6. It is provided by 12A O.S.1971 § 3–403(2)(a), (b), (3):
(2) An authorized representative who signs his own name to an instrument
(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

7. *General Electric Credit Corp. v. Noblett,* 268 F.Supp. 984 (W.D.Okl.1967); *Custom Equipment Co. v. Young,* 47 OBJ 3091 (Dec. 21, 1976), 564 P.2d 1020 (Okl.App.1976); See also Annot., "Construction and Effect of UCC Art. 3, Dealing with Commercial Paper, 23 A.L.R.3d 932, 966 (1969).

ly liable on the note.[8] To establish a defense, the appellant had the burden of proving the defense alleged in his answer by a preponderance of the evidence.[9] His answer was in the form of a general denial, and no specific defense was alleged. We find that the appellant failed to meet his burden of showing a defense to the action, and that the judgment of the trial court is supported by substantial evidence.

In a similar case, *American Exchange Bank v. Cessna,* 386 F.Supp. 494 (W.D.Okl. 1974) it was determined that although the name, address, and telephone number of the maker's corporation appeared on checks where only the maker's personal signature appeared in the signature block without his corporate title, the maker was personally obligated on the check.[10]

In this case the checks show only the number of the corporate bank account written in by the appellant. The signature of appellant does not show the title of his office, and there is no evidence to reflect that appellee had notice of the corporate entity. Therefore, the trial court was correct in determining appellant to be personally obligated on the checks.

AFFIRMED.

All Justices concur.

8. The Texas Supreme Court construed § 3–403(b) in *Seale v. Nichols,* 505 S.W.2d 251, 255 (Tex.1974) and held in order for an agent to avoid liability on his signature, he must disclose his intent to sign as a representative to the other contracting party. It was also recognized prior dealings between the parties are relevant in determining whether the parties understood the signature to be in a representative capacity.

See also *Fanning v. Hembree Oil Co.,* 245 Ark. 825, 434 S.W.2d 822, 824 (1968); *Leahy v. McManus,* 237 Md. 450, 206 A.2d 688 (1965).

9. *Oklahoma National Bank v. Equitable Credit Finance Co.,* 489 P.2d 1331 (Okl.1971); *Persson v. McCormick,* 412 P.2d 619, 627 (Okl.1966).

10. See *Carleton Ford, Inc. v. Oste,* 1 Mass.App. 819, 295 N.E.2d 402 (1973); *Star Dairy, Inc. v. Roberts,* 37 A.D.2d 1038, 326 N.Y.S.2d 85 (1971); *Blayton v. Ford Motor Credit Co.,* 118 Ga.App. 517, 164 S.E.2d 262 (1968); *Fanning v. Hembree Oil Co.,* 245 Ark. 825, 434 S.W.2d 822, 824 (1968) for similar results under the Uniform Commercial Code.